Good morning and welcome to the Richard H. Chambers Courthouse here in Pasadena. It's a pleasure to be here. We have a number of cases on our docket, but some have been submitted on the briefs, including the first case listed, Marcela Ramirez Gregorio and Lucas Ramirez v. Pamela Bondi. That has been submitted on the briefs. So we're ready to proceed with the next case on our docket, Jolie Savage v. Paul Segura. Counsel is ready. You may come forward. Good morning. Morning. I am Nathan Oyster on behalf of the appellants in this appeal. It's an honor and a pleasure to be here before this panel. As you can see from the briefings, this matter relates to the important issue of qualified immunity. And this case arises from a unique factual situation where there was a pro-police vehicle caravan in the city of Whittier. At the same time, there were a group of anti-police protesters on foot, and the groups were interacting with one another. The officers from the Whittier Police Department were tasked with maintaining order, ensuring that both groups were able to express their First Amendment rights, and ensuring the safety of the people that were participating. So it was a planned event. It was a planned event by the group that was the pro-police caravan. They had planned it out. The Whittier Police Department had developed an operations plan as well. I think it was expected there could be counter-protesters, but that part wasn't known definitively that there would be. And the street was closed off to a certain extent. The caravan could go through, but it was not the regular vehicle traffic that you would normally have. That's correct. And so at the time in question when Ms. Savage was arrested, you had a two-lane street where what was occurring was the vehicles in the caravan were driving on the left-hand side of the street where they normally wouldn't have been. And what the officers at that point were allowing the pedestrians to do was to maintain on the right-hand side of the street so that both groups were able to express themselves. The issue occurred when Ms. Savage was in front of two consecutive vehicles that were in the caravan and stood in front of those vehicles for approximately two minutes, preventing them from moving and proceeding on the street. She was not the only person to stand in front of vehicles, was she? In the totality of the day's events, she wouldn't have been. At that specific time period, she was the only person that was directly in front of vehicles. There were some other people around those two vehicles. She was the one that was directly in front. So what made her conduct different than the conduct of people who were standing in front of vehicles at other points in the day? What was it about her conduct that was problematic? It was the duration of time that she was standing in front of the vehicles and there was significantly heated rhetoric to the point where there's a concern that this could have escalated into physical contact between both anyone participating in the vehicle caravan and the pedestrians that were on foot. Why did the police try to intervene beforehand and give a warning and say, why don't you move off to the side, calm things down? Why was the arrest decision made? I think it's a fair question as to, optimally, could a warning have been given before the arrest? Yes. In which case, then I think there would be cleaner basis for the arrest under Penal Code Section 148A1 had the command been given and then she not follow it. As it is. I'll be honest, Mr. Royster, I'm struggling to understand what law you are relying on for probable cause to arrest because I think I've seen a half dozen different citations in the briefing in the court below where now there are citations to the vehicle code including inapposite ones that were laws passed after the incident. There's this criminal malice one that I don't think was raised below. There's, I guess, willful resistance. What do you think is the legal basis to have arrested her? Thank you. I'll streamline this and focus on Vehicle Code Section 21954 subsection A which reads, every pedestrian upon a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway so near as to constitute an immediate hazard. Now… Has that vehicle code provision ever been applied in the context of a street that's been closed off for a protest? I'm not aware of any case law that has interpreted that statute other than the case cited by the district court on the summary judgment ruling which was People v. Ramirez and that's 140 Calap 4th 849 page 852 and that's a 2006 case. And so you are familiar or aware that the district court declined to consider whether the officers had probable cause based on California Penal Code 647C. You're not offering that one up today. For the purpose of oral argument, I'm not. Well, for the purpose, this would be your time to offer it up for any purpose so I just want to be clear about that. That's clear. I recognize the district court did not consider that position. Because from your briefing, it wasn't really clear. So you're relying on this particular vehicle code section now and the hazard was what? The hazard was Ms. Savage was standing in front of vehicles that otherwise would have been proceeding on the street. Well, but the street was closed and when you look at the video, it doesn't seem like anybody was going much of anywhere and certainly not very quickly. I mean, it was a pretty small gap that opened up behind Ms. Savage and the car, I guess, to her in back of her. So I don't know. I just wonder what we're to make of the fact that it doesn't seem like anybody was going anywhere. The cars were on the street for a protest, not to travel to some other place. And I think that circles back to the, let's say, the issue of qualified immunity. Where if the district court and this court were to look at the video and conclude that there was no probable cause under vehicle code section 21954 subsection A, the officers are still entitled to qualified immunity. Because under the statutory language, there's a reasonable officer in that position would believe there was probable cause to have arrested her on that date. When the only case law that the district court has relied on was the 2006 People v. Ramirez case, which had entirely different facts. And I think it can't be lost here that we're dealing with a unique factual situation. This is not a scenario where police officers engage in a routine traffic stop. Didn't the district court note that neither party disputed that the department had blocked off Washington Avenue to non-caravan traffic, that both police demonstrators and counter demonstrators walked through the streets where the caravan cars were driving, and that the caravan cars traveled at extremely slow speeds and frequently stopped? And on these facts, it seems like the district court determined a reasonable jury could determine that Savage did not suddenly leave a curb or other place of safety, or that the caravan cars did not constitute immediate hazards. So you're saying the district court was wrong? I believe, to the extent that's summarizing the district court's conclusion that there's either no constitutional violation or a triable issue, yes, I believe the district court erred on that point. But as to the second point would be, let's look at this and say, assume the district court were right. Assume the district court is correct that there was no basis to arrest Ms. Savage. Then we need to look at the qualified immunity issue and determine, using, let's say, the Ashcroft versus Al-Kid standard, was there existing precedent that would place the statutory or constitutional question beyond debate? So even if a court is now looking at this issue and concluding there was no legal basis to arrest Ms. Savage, I disagree with that, but let's... No legal basis in light of the facts that we have to look at in the light most favorable to the plaintiff, right? I mean, that's what we have to do and what I think the district court had to do, and that's what I think is kind of presenting a bit of an issue for you. And I generally agree with that point. Let me rephrase it. I agree the court needs to view this in the light most favorable plaintiff, but there is also the issue of video evidence, and I think that the U.S. Supreme Court precedent in Scott v. Harris makes the factual analysis different than if this were just a case that was submitted with one side submitting declarations and the opposing side submitting declarations. But I guess Scott v. Harris says that we can look to the video evidence only if it clearly contradicts plaintiff's allegations, and we've all seen all the several videos. I didn't see Ms. Savage stepping off the sidewalk right away in that immediate moment, and I think it's a matter of debate whether one could, whether she was posing a hazard of some kind. And so if you credit her allegations that she wasn't, I think the qualified immunity analysis that I'm wrestling with is would any officer reasonably conclude that there was probable cause to arrest for a vehicle code violation where the street has been closed off to demonstrators, she has not stepped off the curb suddenly, and is not posing any sort of immediate threat as to constitute an immediate hazard. And in that context, I don't know that that wouldn't be enough for a tribal issue for the jury to decide. I think there's California law's SPAN case that says it had to have been done in a way that made it virtually impossible to avoid an accident. That's a pretty high standard under that particular provision. And I acknowledge that case law, and as to the point of the immediate hazard issue, as to the facts that preceded Ms. Savage's arrest where she's in the street, I don't think there's any factual dispute between the parties in the sense that Ms. Savage agrees that she was blocking the cars for approximately two minutes. We agree with that timeline. We can see from the video she's clearly in front of the vehicles. I think we have a legal question as to whether that means she was an immediate hazard. I understand she's trying to draw the factual conclusion that she was not an immediate hazard, but I think that's a legal question, not a factual question. So that's appropriate for a court to resolve as opposed to the immediate hazard being a jury question. That I do believe she was an immediate hazard because Well, I think one of the things that makes it even more difficult is that at the time that she was arrested, she wasn't standing in front of the car anymore. She had already moved out of the street. So, I mean, what's the immediate hazard to a vehicle at that point? And thank you. I want to address that point. And I know that as to the arrest aspect, that's something that Ms. Savage focused on heavily in her arguments. I think for the purpose of the arrest, I don't think that is pertinent. I think that can matter in the use of force allegation. But, for example, if the officers observed Ms. Savage standing in front of the vehicle, and if we assume for the sake of argument that that was a violation of Vehicle Code Section 21954, Subsection A, then the officers could have arrested her 30 minutes later, in my view. Like, if she committed the crime and they observed it, they would still have the legal basis to arrest her, even if she was no longer committed. Sure, but it just somewhat suggests that there wasn't an immediate hazard. I mean, I think if the officers thought, oh, my gosh, there's a pedestrian in the street, they're going to cause a collision, you've got a million people standing around watching, you would think that officers would take action to move a pedestrian. Do you understand what I'm asking or what I'm suggesting? I do. And some of that I could address by saying there was a chain of events where officers on the rooftop flagged that Ms. Savage was in front of the vehicles, radioed down to officers on the ground. The officers on the ground formed an arrest team and then made the arrest. It took some time from the time the decision was made until the arrest was made. Okay, so you say we shouldn't read anything into that one way or another? That's my argument. Okay, I understand your argument. Did you want to reserve some time for rebuttal? I would like three minutes, if possible. We'll see how far we've gone. If I have less, I will take whatever's left. We'll see. At least a minute or two, but I'm not sure we'll get to that. Thank you very much. Good morning. May it please the Court, Rebecca Brown on behalf of the appellee, Jolie Savage. To start off with the discussion we were just having regarding the immediate hazard issue, the District Court did find that a reasonable jury could find that Ms. Savage was not creating an immediate hazard. That's a decision that, with all due respect, this Court does not have the jurisdiction to review. And now we can look at this question in the probable cause qualified immunity analysis, but as this Court has raised, there are numerous facts that are not disputed that show that Ms. Hazard was not, or in the moments preceding. And I would like to clarify two points that were misrepresented by the appellant's counsel. One, the Court found that it was undisputed that the Whittier Police Department closed down the street and allowed pedestrians on both sides, the pro-police and anti-police people, to travel throughout the street, including in between the cars. So there was not a segregation of cars on the left side of the street and pedestrians on the right side of the street. And Ms. Brown, how often would you say people were crossing? My impression from the videos was that people were milling about and there was kind of more of a free flow happening during the course of time. But do you have any sense of how often protesters or others were passing through cars or between cars? I agree with your assessment of the video. It appears from the videos that the protesters, including both anti- and pro-police people, were kind of intermingling and moving between the cars throughout the duration of the relevant time here, including before Ms. Savage stepped in front of the two vehicles and after her arrest. And I would also like to point out that the District Court found that it was undisputed that not only was Ms. Savage standing in front of vehicles, but other individuals were standing in front of the vehicles as well at the same time that she was. So you can see that in the videos as well. You can also see there were other vehicles in the car caravan procession that would have blocked their forward movement, which is to say that if Ms. Savage was not there herself, if she was erased from the picture, there were still other individuals and vehicles in the pathway of the two vehicles that she did stand in front of. What is the relevance, if any, of the fact that Ms. Savage did seem to be maybe not the only one, but certainly to the greatest degree, you know, screaming, using profanity, etc.? Counsel suggested that, you know, that that's part of what gave the officers probable cause for the arrest. I think that information is very relevant to her First Amendment claims, but it's not relevant to the probable cause analysis. Ms. Savage was screaming. She was using profanity. She was expressing her view on police and on the pro-police caravan when she was doing so. And she leaned over on the hood of the car. I mean, I think if the correct provision had been cited, we'd have a whole other analysis here. Well, we're looking at the provisions that the district court ruled on. And for the one that we're just focusing on now, 21-954. I understand that. But if we're looking at this under 624C, I'm not quite sure what the outcome would be here. Well, if we were to look under that statute, there still is the malicious intent requirement. And I think, first of all, that's a factual question for the jury. The district court didn't rule on that. But just because she was yelling and expressing her views quite fervently does not indicate that she had malicious intent. She never made threats of violence. She never engaged in any violence at the protest. She yelled for about two minutes, and then she stepped over to the sides. So it's not – I don't believe that a reasonable officer would believe that she had malicious intent. I mean, it's a high bar, no reasonable officer. So officers could perform an arrest, and even if it's mistaken, even if they think they have probable cause, they would still be entitled to qualified immunity. But this – in your view, the standing in front of the car for two minutes and being very vociferous and not letting the car move, no reasonable officer would have thought that there might be probable cause to arrest for that? I don't believe so. And I think our First Amendment case law that we've cited, McKinney, Duran, Hill, it's very, very clear in the Ninth Circuit and nationally that people have a right to protest the police, whether that involves using obscenities, protesting verbally but fervently without risking arrest. So just because she was screaming and cursing and expressing her views does not establish probable cause. Well, it wasn't just that. She was leaning over the hood of a car in addition to that, and I'm just not quite sure if that made enough of a difference. I don't believe that it does. She was standing in front of the cars for two minutes. She did kind of lean forward for a brief period of time, but she never threatened to hurt anyone in that car. She was just expressing her views, and then she moved to the side. The car was able to proceed. And I would also like to mention, you know, as the court raised, during this two-minute period where she was standing in front of the cars, no officer ever told her that she needed to move, that she would be arrested or that force would be used on her if she didn't stop doing what she was doing. And while in this case the officers on the roof radioed down to set up her arrest, as you can see in the videos, there were dozens and dozens of officers on the street. So any of those officers, there were plenty nearby that saw what was happening and could have intervened but did not do so. And I think that does speak to the fact that there was no real safety concern or threat at that time. Ms. Brown, can I ask about the integral participation issue? I'm struggling to understand how Officer Robert was an integral participant. I understand the other officers either called for the arrest or said in motion or were part of the arrest team. But as far as I can tell, he was just on the roof. So what is his involvement to extend liability to him for the arrest? Yes, he was on the roof and he was working in conjunction with Appellant Zulke on the roof. What does that mean? That he was also watching Ms. Savage with Appellant Zulke and was aware of the decision to make that radio call down to order her arrest. And at no point did he, between viewing Ms. Savage on the street, that radio call happening, and her arrest going forward on the ground and the use of force, did he object to it or intervene? But why is it enough to have acquiesced? What rank does he have in relation to the other officers? My understanding is that he was a line officer, as was Zulke. So he couldn't have countermanded the arrest order or done anything. What would non-acquiescing activity have been for him? To intervene, to call down and say there was no need for arrest, to tell Officer Zulke that. I think it's similar to Boyd v. Benton County, where you have the one officer deploying a flashbang at the execution of a search warrant, and the other officers that were there sort of serving as backup, and none of them intervened and still participated in that action, which is similar to what we have here. What's that case? That is Boyd v. Benton County. The site is 374F3rd, 773. That's a 2004 Ninth Circuit case, and they were found to be integral participants. The reason I was asking about 647C is because it seems like the appellants, in their opening brief, at least were asking us to consider that argument, and we would be considering an argument raised for the first time on appeal. And I'm just curious, what standard you think the court should apply when deciding whether it can consider arguments raised for the first time on appeal? The court should consider the standard that it used in Backe v. United States, which was a 2011 Ninth Circuit case. The site is 632F3rd, 1140 at page 1149, which says the appellate court typically does not consider new arguments raised for the first time on appeal. There are limited exceptions, which include to prevent the miscarriage of justice, a change in law, or purely an issue of law. And appellants did not contend that any of those three exceptions apply here, so there's no basis for this court to consider that new argument at this point. And we haven't talked much about the First Amendment retaliation claim, but assuming there was no probable cause to arrest, then that would form the basis for the claim itself. I'm sorry, I couldn't hear that. First Amendment retaliation. If the officers did not have probable cause to arrest, then that could form the basis for the claim itself. I guess what I'm wondering is whether we need to get into anything about Nieves or an exception where Ms. Savage was treated differently than other protesters. Well, I think in the event that the court finds that there was no probable cause, we don't need to get into Nieves. But if the court does find that there was probable cause, Nieves shows that, nonetheless, our First Amendment retaliation claim stands. And in Nieves, the court used the example of jaywalking as a charge that people are not typically arrested and prosecuted for to show the different treatment. And here, that's exactly the original offense that Ms. Savage was going to be arrested for, that Vehicle Code Section 21954A is tantamount to jaywalking. And so it's directly applicable. So even if the court finds there is probable cause, her First Amendment retaliation claim still stands. And I think we have quite substantial evidence in the record that Ms. Savage's speech was a substantial or motivating factor for her arrest. And unless there are other questions on that, I would like to touch on the fact, which I mentioned in our briefs and which already occurred earlier today, that in the appellant's briefs and in their argument, they repeatedly failed to abide by their obligation to construe the facts in the light most favorable to Ms. Savage, including misrepresenting facts, asserting their own version of disputed facts, or omitting critical facts. For example, in their brief, the appellants contended that Ms. Savage fell to the ground. Well, the crux of this case is that Ms. Savage asserted that the officers pushed and pulled her to the ground, and this is a fact that Judge Phillips found to be disputed. And that's a finding that appellants cannot now challenge on appeal, on this interlocutory appeal. Let me ask, actually, I'm glad you raised this. What about the attempted bite? Because I was trying to find whether there was clearly established law related to the bite. And I understand Ms. Savage was taken down before the bite occurred, but how do we address that particular issue in the context of the excessive force claim? There is a substantial established law regarding minimal resistance and not minimal resistance in the face of unlawful force can be reasonable. In Hammer v. Gross, which is a 1991 Ninth Circuit case, 932 F. 2nd 842, the court ruled that force can still be excessive when considering the level of resistance, when there is resistance, alongside the severity of the force used in all of the relevant circumstances, as well as Blankenhorn v. City of Orange, 485 F. 3rd 463, which tells a person has limited right to offer reasonable resistance to an arrest that is the product of an officer's personal frolic. That right is not triggered by the absence of probable cause, but rather by the officer's bad faith or provocative conduct. But the personal frolic is an officer just going off and doing their own thing, not really acting out of the color of law. That doesn't seem so applicable to me. Speaking of the bite specifically, Ms. Savage contends that Officer Goodman put his hand very close to her nose and mouth, causing her to reasonably believe that he was going to cover her airways and she would not be able to breathe. I don't know how putting a hand over an arrestee's mouth or close to their mouth serves any legitimate law enforcement purpose here. So I would consider that to be a personal frolic and an unreasonable use of force. I take it you would agree, but there aren't attempted bite cases out there, I guess, to be more illuminating on this issue? Not that I'm aware of. Correct. But I do think there are. Those cases I mentioned and the issue of low-level or minimal resistance has been addressed repeatedly, and that's not dispositive of a finding of excessive force. The question is, was the force used reasonable in light of that fact? And here, smashing her face into the ground and the subsequent force that followed, including putting the knee in the back for eight seconds and manhandling her and roughly handcuffing her, was not reasonable in light of that minimal resistance. Tell me the sequence. I thought putting her face on the ground was after she was attempting to bite the forearm of the officer? That's correct. Okay. So in sum, the case law that we cited in the brief, including Lalonde, Meredith, Nicholson, McKinney, clearly establishes Ms. Savage's right to be free from excessive force, unlawful arrest, and retaliation, and I encourage the court to remand this case to go to trial for these factual determinations to be made by a jury. Unless you have any other questions, I'll submit. Thank you. Thank you. Mr. Oyster, I'll give you two minutes. Thank you very much. Briefly, with respect to the integral participation issue for Officer Robert, he was a line-level officer who did have no involvement, and there was no evidence tying him into any participation in the subsequent events. With respect to going over the facts, we have relied heavily on Scott V. Harris for this court's ability to look at the video evidence and determine the facts based on the video evidence, even if the district court interpreted those facts differently. And we believe the video evidence supports that Ms. Savage, first of all, was not pulled to the ground as a preliminary matter. But moving on in the sequence of the use of force events... What do you think happened there? What's your view if she wasn't pulled to the ground? She either fell to the ground or intentionally went to the ground. Based on how her feet are positioned in front of her body, she was either resisting the officer's efforts to walk her away from where she was standing, and her feet came out from under her. But the officers did not pull her to the ground, and the video does not support that position. But as to then the subsequent series of events, you have the scenario where, yes, Ms. Savage admits that she attempts to bite Officer Goodman. Even if Officer Goodman's hand had actually been near Ms. Savage's mouth, she still didn't have the ability to bite him. She's still not legally entitled to. And the officers still would have been able to use reasonable force in continuing to detain her and preventing Ms. Savage from trying to bite, make a second attempt at biting an officer. If there are any other questions for me, I'm happy to answer. Thank you very much. Thank you both. Ms. Brown and Mr. Oyster, I appreciate the oral argument presentations here today. The case of Joe Lee Savage v. Paul Segura et al. is submitted.
judges: MURGUIA, SANCHEZ, THOMAS